IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

CAROLYN M. RIDGEWAY, )
                                               )
            Plaintiff, )    Case No. 05-313-HA
                                         )
    vs. )    OPINION AND ORDER
                                         )
JO ANNE B. BARNHART, Commissioner )
of Social Security, )
                                         )
            Defendant. )

Richard A. Sly
1001 S. W. 5th Avenue, Suite 310
Portland, Oregon 97204

    Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon 97204

L. Jamala Edwards
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

Attorneys for Defendant

KING, Judge:

Plaintiff Carolyn M. Ridgeway brings this action pursuant to section 405(g) and 1383(c)(3) of the Social Security Act to obtain judicial review of a final decision of the Commissioner denying her application for supplemental security income benefits ("SSI"). I reverse the decision of the Commissioner and remand for further proceedings.

## BACKGROUND

Plaintiff filed an application for SSI on November 28, 2001. The application was denied initially and upon reconsideration. After a timely request for a hearing, plaintiff, represented by counsel, appeared before an Administrative Law Judge ("ALJ"). On June 25, 2004, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on February 10, 2005.

## LEGAL STANDARDS

The Social Security Act (the "Act") provides for payment of DIB to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits ("SSI")

may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The burden of proof to establish a disability rests upon the claimant. Gomez v. Chater, 74 F.3d 967, 970 (9th Cir.), cert. denied, 519 U.S. 881 (1996) (DIB); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992) (SSI). To meet this burden, the claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. 20 C.F.R. §§ 404.1520 and 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1996) (DIB); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989) (SSI). First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the

claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Distasio v. Shalala, 47 F.3d 348, 349 (9th Cir. 1995) (DIB); Drouin, 966 F.2d at 1257 (SSI). The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

When an individual seeks either DIB or SSI because of disability, judicial review of the Commissioner's decision is guided by the same standards. 42 U.S.C. §§ 405(g) and 1383(c)(3). This court must review the case to see if the decision of the Commissioner is supported by

Page 4 - OPINION AND ORDER

substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). It is more than a scintilla, but less than a preponderance, of the evidence. Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Id. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Id. at 720-21.

**FACTS**

I. Ridgeway's History

Plaintiff, a 62 year old woman at the time of the hearing, alleges disability beginning January 1, 1998, due to back pain, visual problems (Fuch's corneal disease) and mental impairments. Plaintiff obtained her GED; her past work includes bookkeeper and property manager. Plaintiff was in a car accident in 1982, causing a back injury. She was incarcerated in a federal prison for six years beginning in 1995 for marijuana related offenses and for filing a false passport application.

While in prison, plaintiff was diagnosed with Fuch's corneal disease due to symptoms of decreasing vision in both eyes, and was recommended for a corneal transplant. Plaintiff received a corneal transplant, cataract removal, and interocular lens implant in the left eye on October 15, 2002. On April 4, 2003, L.F. Rich, M.D., plaintiff's ophthalmologist hoped for improvement in

Page 5 - OPINION AND ORDER

her vision as the transplant healed, but noted that plaintiff could not currently read and her distance vision was affected.

She saw a psychiatrist on December 7, 2001, complaining of panic attacks at night, depression, low motivation, and anhedonia. Phil Bolton, M.D. diagnosed her with major depressive disorder and panic disorder without agoraphobia. On August 21, 2002, at the suggestion of her probation officer, plaintiff saw a psychiatric/mental health nurse practitioner who diagnosed generalized anxiety disorder. In early February 2003, plaintiff began to see a counselor, Melinda Maginnis, M.A., for approximately twice a week through January of 2004. Ms. Maginnis expressed her opinion in January of 2004 that plaintiff suffered from a borderline personality disorder with histrionic, narcissistic, and obsessive/compulsive features, that she would not make a "reliable employee," and that she would likely miss more than four days a month from work due to her impairments. Tr. 551. On February 25, 2003, A. Michael Leland, Psy.D., diagnosed plaintiff with mood disorder, not otherwise specified, with depressive and anxious features, and cannabis dependency, in full sustained remission by history.

II. The ALJ's Decision

The ALJ found that plaintiff had physical and psychological impairments considered severe within the meaning of 20 C.F.R. § 404.1520(b). Specifically, he found that she suffered from visual problems, affective disorder, anxiety disorder, and substance abuse disorder in remission, and that these impairments are severe. He determined that back pain is not a severe impairment. He did not specifically conclude whether or not personality disorder is a severe impairment, but did note that other complaints appear in the record on which plaintiff did not

base her claim of disability and that he felt these other conditions were temporary or insignificant.

The ALJ determined that plaintiff could perform the full range of exertional work, but is limited to work that does not require fine visual acuity including close vision, distant vision, or depth of field. The ALJ also found her limited to performing simple, routine, repetitive work, with occasional contact with co-workers and no contact with the general public.

Based on this residual functional capacity, and the testimony of the vocational expert ("VE"), the ALJ concluded that Ridgeway could not return to her past relevant work However, relying on the VE's testimony, the ALJ concluded that plaintiff could perform a significant number of other jobs that exist in the national economy, including basket filler and pen/pencil bander. Accordingly, the ALJ found that plaintiff was not under a "disability" within the meaning of the Social Security Act, at any time through her date last insured.

## DISCUSSION

I.  Severe Impairments and Medical Evidence

Plaintiff asserts that the ALJ erred in concluding that her back pain, due to the car accident in 1982, is not a severe impairment. In addition, plaintiff contends that the ALJ improperly concluded that her personality disorder is not a severe limitation, presumably one of the "other symptoms and complaints" in the record that the ALJ noted is "transient" or does "not cause significant limitations in the claimant's ability to function." Tr. 24. The Commissioner responds that the record contains references to these impairments outside plaintiff's onset date, and argues that the ALJ properly evaluated the evidence to conclude these impairments were not severe.

An impairment or a combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. Smolen v. Chater, 80 F.3d 1273 (9th Cir. 1996).

In concluding that plaintiff's alleged back pain is not a severe impairment, the ALJ relied on the examination findings of Tatsuro Ogisu, M.D., who concluded that plaintiff did not experience any limitations in sitting, standing, walking and lifting. In addition, the ALJ noted that plaintiff has not taken any medication for her alleged back pain, that she has rarely complained of back pain to her treating or examining physicians, and that plaintiff's lay witness did not mention back pain as a problem for plaintiff. I find that the ALJ stated sufficient reasons, supported by substantial evidence in the record, in support of his conclusion that plaintiff's back pain is not a severe impairment.

With regard to plaintiff's purported personality disorder, plaintiff relies heavily on a diagnosis of borderline personality disorder offered by Melinda Maginnis, MA, plaintiff's counselor. However, evidence from a therapist is only "evidence from other sources" that may be used to show the severity of an impairment.[1]  404 C.F.R. § 1513(d). Medical diagnoses are beyond the competence of lay witnesses. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).

Nevertheless, the ALJ neglected to explain why he did not adopt the full testimony of Sally V. Clayton, Ph.D., the ALJ's medical expert, who opined that "the primary diagnosis is the personality disorder." Tr. 602. The ALJ relied heavily on Dr. Clayton's testimony in concluding

---

[1] Plaintiff provides no evidence that Ms. Maginnis' evaluation was countersigned by a physician.

that plaintiff's impairments did not equal or meet the listing criteria, yet he appeared to ignore Dr. Clayton's specific diagnosis of personality disorder. The ALJ should have set forth clear and convincing reasons for his implied rejection of that diagnosis because it was an uncontroverted opinion. See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Accordingly, the ALJ erred in not considering whether plaintiff's personality disorder constitutes a severe impairment.

This issue is related to the ALJ's finding that in addition to not being an acceptable medical source, Ms. Maginnis' opinion that plaintiff would miss work more than four days a month was not supported by objective findings. However, the ALJ set forth his reasoning that plaintiff's attitude and behavior problems do not mean plaintiff will be absent from work frequently. Having given a reason for rejecting this lay witness' testimony, the ALJ's opinion is supported by substantial evidence.

II.     Credibility Determination

Ridgeway contends that the ALJ improperly rejected her testimony as to her psychological impairments, her back pain, and her visual limitations. The Commissioner argues that the ALJ's credibility assessment is supported by substantial evidence, noting that examination findings do not support plaintiff's claims that she experiences pain in sitting, standing, walking or lifting, and plaintiff's daily activities are more substantial than her allegations of pain and anxiety would otherwise support.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or

Page 9 - OPINION AND ORDER

combination of impairments could reasonably be expected to produce some degree of symptom. Smolen, 80 F.3d at 1281-82. The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. Id. at 1282.

In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284. Clear and convincing reasons for discrediting a claimant's testimony include consideration of inconsistencies between testimony and conduct, daily activities, type and dosage of medication, failure to seek treatment or to follow prescribed treatment, and reports to physicians. 20 C.F.R. 404.1529; see also, Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991).

Plaintiff produced medical evidence of underlying impairments consistent with her complaints and there is no evidence that she is malingering. Therefore, the ALJ must provide clear and convincing reasons for rejecting Ridgeway's testimony and for finding that the medical records did not support the severity of the symptoms she alleged.

The ALJ relied on the examination findings of Dr. Ogisu in rejecting plaintiff's allegations of back pain. Dr. Ogisu noted that plaintiff had no trouble getting on and off the examination table, that plaintiff's lumbar and cervical ranges of motion were normal, that

Page 10 - OPINION AND ORDER

plaintiff's gait was steady, and that she could toe, heal, and tandem walk without problem. In addition, plaintiff could bend deeply at the knees and rise with ease. With regard to her level of anxiety, the ALJ expressed his reliance on plaintiff's comments about her daily activities, such as her statements that she walks around to "browse the city," and on her friend Jill Carman's testimony that the two of them attend swap meets together. Tr. 25.

After fully and fairly considering all the evidence, I find that the ALJ's gave clear and convincing reasons supported by specific facts in the record in rejecting Ridgeway's claimed limitations as to back pain and anxiety. With each of plaintiff's claims, the ALJ identified the testimony he found not credible and the evidence he relied on in coming to his conclusions. The ALJ's credibility findings and interpretation of the record are supported by substantial evidence with regard to plaintiff's alleged back pain and anxiety.

As for plaintiff's visual impairments, it is not entirely clear whether the ALJ credited her statements. Plaintiff testified that to be able to read, she must block her left eye and "really concentrate" to focus her right eye. Tr. 580. When she goes to the grocery store, she must have help to find the items she needs. When she is on the bus, she relies on the driver to tell her where to get off because she has trouble seeing street signs.[2] The ALJ appears to have considered plaintiff's visual impairments in forming plaintiff's residual functional capacity–none of plaintiff's testimony indicates that she is utterly unable to see, only that her vision is limited, and the ALJ's residual functional capacity accounts for limited vision.

---

[2]While the Commissioner reports plaintiff's statements that she exercises daily and enjoys pottery as a hobby, these were not statements the ALJ relied on in evaluating plaintiff's symptom testimony. Therefore, I cannot consider it in evaluating the ALJ's opinion. See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision.").

Nevertheless, in a separate section of his opinion, the ALJ states, "these conditions [visual problems and affective and anxiety related disorders] do not affect the claimant's functioning to the degree she alleges . . . ." Tr. 23. Therefore, if the ALJ did not credit plaintiff's statements, the ALJ failed to set forth clear and convincing reasons for rejecting plaintiff's testimony regarding her vision because none of the ALJ's reasons for not fully crediting plaintiff's symptom testimony are relevant to plaintiff's visual impairments. As explained below, I intend to remand this case to the ALJ, at which time the ALJ should clarify whether he credits plaintiff's testimony regarding her visual impairments, and if not, he must give clear and convincing reasons for finding her symptom testimony not fully credible.

III.   Lay Witness

Plaintiff complains that the ALJ neglected to provide reasons for rejecting the opinion of Leanne Calandrella, plaintiff's case manager at a shelter where plaintiff lived. In addition, according to plaintiff, the ALJ did not fully accept Ms. Carman's testimony with regard to plaintiff's limitations. The Commissioner responds that the ALJ's failure to give specific reasons for rejecting the testimony of Ms. Calandrella constitutes harmless error, or alternatively that the ALJ included her observations in forming plaintiff's residual functional capacity. The ALJ also argues that Ms. Carman's testimony did not support plaintiff's claim of disability as it demonstrated she was more active than she let on.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. A medical diagnosis, however, is beyond the competence of lay witnesses. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).

Page 12 - OPINION AND ORDER

While the ALJ summarized Ms. Calandrella's testimony, he does not expressly indicate how he used it. Nevertheless, it is apparent that he did not reject or discount it. In fact, it appears that he considered Ms. Calandrella's testimony both in concluding that plaintiff experienced visual problems and suffered from an anxiety disorder, and in forming plaintiff's residual functional capacity. In plaintiff's residual functional capacity, the ALJ encapsulated Ms. Calandrella's observations–plaintiff's inability to see and her inability to be in a fast-paced environment or around many people. It is only if the ALJ wishes to discount testimony that he must give reasons for doing so. See Dodrill v. Shalala, 12 F.3d 915 (9th Cir. 1993). The ALJ gives no indication of having rejecting Ms. Calendrella's testimony. As a result, the ALJ did not err.

Lastly, I agree with the Commissioner that the ALJ properly considered Ms. Carman's testimony in finding that plaintiff's symptoms were not as severe as plaintiff claimed. While plaintiff makes much of Ms. Carman's testimony that plaintiff has difficulty staying on task at the swap meets, reading this testimony in context Ms. Carman was expressing her observation that plaintiff has difficulty spotting Ms. Carman in a crowd. The ALJ considered plaintiff's visual impairments in crafting plaintiff's residual functional capacity. The ALJ neither rejects nor discounts this testimony, and therefore, did not err.

IV. Residual Functional Capacity

Plaintiff argues that the ALJ's hypothetical functional capacity did not fully encapsulate plaintiff's visual impairment. In addition, plaintiff claims the hypothetical did not include plaintiff's musculoskeletal or psychological limitations.

The ALJ found that Ridgeway could perform other work existing in significant numbers in the national economy. The Commissioner has the burden in step five, and can satisfy this burden by eliciting the testimony of a vocational expert (VE) with a hypothetical question that sets forth all the limitations of the claimant. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). The assumptions in the hypothetical question must be supported by substantial evidence. Id.

The opinion of the VE cannot be relied upon if the vocational hypothetical asked by the ALJ is not supported by the record. Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988). When the vocational hypothetical does not reflect all of the claimant's limitations, the "expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991) (citations omitted).

With regard to the residual functional capacity the ALJ formed for plaintiff's visual impairments–that plaintiff "cannot perform work that requires fine visual acuity, including work that requires good close vision, distant vision, or depth of field," Tr. 26–the ALJ properly relied on the functional capacity assessment of a DDS file reviewer. Contrary to plaintiff's argument, nowhere does the ALJ rely on plaintiff's physicians' statements about their expectation that her vision will improve. In addition, plaintiff's statement that she is incapable of "any work requiring any significant use of vision at all," Plaintiff's Brief at 22, is not supported by the record. Plaintiff points to the statements made by L.F. Rich, M.D., plaintiff's treating eye doctor, but Dr. Rich's most recent statement is that plaintiff's vision does not "permit her to read and her distance vision is compromised as well." Tr. 518. The ALJ's residual functional capacity accounts for these visual limitations. Similarly, the ALJ's residual functional capacity considers

the observations made by plaintiff's friend (plaintiff cannot read the bus schedules) and counselor (plaintiff cannot see well). Contrary to plaintiff's assertion, plaintiff's caseworker offers no observations about plaintiff's visual limitations. Nevertheless, as I indicated above, the ALJ should consider whether plaintiff's statements regarding her visual impairments, if fully credited, affect her residual functional capacity.

In addition, because I found that the ALJ's conclusion regarding plaintiff's back pain is supported by substantial evidence, the ALJ properly did not include plaintiff's back impairments in plaintiff's residual functional capacity. However, because the ALJ did not consider whether plaintiff's personality disorder is a severe impairment, the ALJ also did not include any potential limitations associated with that disorder when crafting plaintiff's residual functional capacity. As a result, the question the ALJ posed to the VE may not have reflected all of the plaintiff's limitations. Therefore, the ALJ did not properly rely on the opinion of the VE in concluding that plaintiff can perform other work existing in significant numbers in the national economy. For this reason, the ALJ's finding is not supported by substantial evidence.

V.    Appropriate Remedy

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen, 80 F.3d at 1292. The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000). The Court should grant an immediate award of benefits when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of

disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.  Id.

I conclude that the ALJ's failure to consider whether plaintiff's personality disorder is a severe impairment, and the related oversight of not including any potential additional limitations related to that disorder in plaintiff's residual functional capacity, requires that I remand the case for further proceedings.  The ALJ should pay particular attention to his medical expert's testimony that plaintiff's personality disorder "could interfere with her ability to be on time or to perform throughout the workday," Tr. 602, and that the combination of plaintiff's personal disorder, anxiety and visual impairments "would impact her functioning[.]"  Tr. 603.  The ALJ should also clarify whether he accepted plaintiff's symptom testimony regarding her visual impairments and consider whether plaintiff's residual functional capacity is affected.

## CONCLUSION

The decision of the Commissioner is reversed.  This action is remanded to the Commissioner under sentence four of U.S.C. § 405(g) for rehearing consistent with this opinion.  Judgment will be entered.

IT IS SO ORDERED.

Dated this ___8th___ day of February, 2006.

                           ___//s/ Garr M. King_____
                           Garr M. King
                           United States District Judge